Good morning everybody. We will start with case number one, case number 18-1277 Gaylor v. Mnuchin and Peecher. We'll start with Mr. Pannuccio. May it please the Court, Jesse Pannuccio for the United States. Since the ratification of the 16th Amendment, Congress and the IRS have implemented the income tax with special rules for employment-related housing. The tax code has numerous such provisions, each with slightly different requirements, but all united by a general theme of exempting the value of housing that is highly associated with work. The clergy exemption found in Section 107, which dates back to the very first years of the income tax, is but one example of the larger scheme. The District Court erred in striking down the 65-year-old portion of that statute that exempts housing allowances. The exemption satisfies all three prongs of the It does not offend the Establishment Clause to exempt churches from financially supporting the government. Is it the government's position that we should analyze the case both under the historical standards, the Town of Greece, as well as Lemon? Well Town of Greece says it is not necessary to define the precise boundary of the Establishment Clause where history shows it is an accepted practice, and so if the Court were to find that this practice fits within what was historically accepted during the founding generation, then that would be enough, but we think we satisfy both tests. We think both under a historical analysis and under a Lemon analysis the challenge statute passes muster. If we go on the Lemon analysis, are we required to do a legislative history of Section 107, or can we take the government at its word? Well the cases state that if, and both the Seventh Circuit cases and Supreme Court cases state that if a secular legislative purpose can be inferred, reasonably inferred from the statute, then Congress deserves deference on that, and that is one of the errors with the District Court opinion. At every turn the District Court was at pains to try to explain away any possible secular purpose. In both the actual legislative history, and by that I mean not just a snippet of a floor statement, but the actual evolution of the statutes here, of the IRS rulings, of what federal courts were doing, all of that shows the secular purpose here as opposed to some Is that more like entanglement that would be a concern there? Well there are really three, I think, secular purposes that can be pointed to for this statute. One is indeed to avoid entanglement and interference, but another was simply, again, since the beginning of the tax code, since the beginning of the income tax, the IRS and Congress have been dealing with what to do with the issue of housing when it's related to work, and that from the very first days, and there is a general rule, there are two general rules, there's 119 for in-kind housing, and then there's the 280A exemption when it's monetary, when cash is used for housing, and then there are categorical exceptions, where Congress just made the judgment, as a matter of course, because of the nature of the profession, we don't need to have the IRS engage in the individualized inquiry, and you see that throughout the code, and one of the problems with the district court's opinion and the position of appellees is they want to say it is fine for Congress to establish a general rule, it is also fine for Congress to make the legislative judgment that there can be categorical exceptions to that rule, in other words Congress is going to say, for military, we know that typically housing is still related to work, the IRS doesn't need to engage in the convenience inquiry. As appellees would have it, and as the district court would have it, Congress could do that for every group of employees if they wanted to, except clergy, because then it starts to look like a religious purpose, and that turns into a Trinity Lutheran problem. If the Congress were allowed to make these categorical exceptions for everyone but clergy, then it would look like discrimination against religion, and they'd run into another problem. So that is one purpose, is a categorical judgment about convenience of the employer, it's for administrative convenience of the IRS. A second purpose is indeed, as you said, your honor, to reduce entanglement and interference. Just as courts, for example, want to stay out of it, and Hosanna Tabor and this court's opinion in the 2008 Salvation Army case, the internal affairs doctrine, the ministerial exception, courts want to stay out of the internal affairs of what ministers are doing within churches, Congress could want the IRS to do the same thing, that is avoiding entanglement is a well-recognized secular purpose under the governing case law. And then a third secular purpose of 107.2 was to remove differential treatment of ministers. So the history of this is 107.1, or the precursor to it, is enacted in 1954. There is much evidence in the legislative history that the sponsor of the bill received inquiries from many religions, many ministers saying, this is affecting how we structure our internal affairs, the treatment here is differential, and Congress wanted to equalize the treatment so as not to be engaged in the internal affairs of the church. So there are three independent and fully sufficient secular purposes, and this court has said one secular purpose is enough. Here I think we have three that easily satisfy the first prong of the Lemon Test. Under the second prong of the Lemon Test, the statute cannot have the primary effect of advancing or inhibiting religion, essentially it's an endorsement test. And here there's ample reason to believe that 107.2 is not an endorsement of religion. First, as I've mentioned, it's part of a larger scheme dealing with employment-related housing in which Congress has a general rule and some categorical exceptions. In this way, this looks a lot like the Walls case where the state had a general scheme of exempting non-profits, religion fit within that, and the Supreme Court approved that. And the same thing here, we have a general scheme, and then there is a religious accommodation fitting within that. Second, the court has said repeatedly, the Supreme Court in Amos, in Gillette, has said allowing the church to advance religion is not government advancing religion. In other words, that is just because you have an accommodation that deals with the realities of clergy life, that does not turn it into improper endorsement under the Lemon Test. And I would note, the district court here, the main thrust of the district court's opinion on why it did look like endorsement was, again, to say that the other categorical exceptions for military, for government employees living abroad, for any employees living abroad, the modified in-kind categorical exception for university employees and anyone working at a hospital affiliated with a university. The district court said, well, none of those, that Congress had other reasons for doing all of those things, and we can explain it away as a theoretical matter. Again, that starts to look like you're carving out religion from getting a benefit that you're offering everybody else, which is the ability to get a categorical carve-out, and that would be a problem under Trinity Lutheran. It strikes me that one of the differences between the parties is the scope of the lens through which they're going to view these various exceptions. If you look at it very narrowly and then make contrasts and comparisons, it's going to have one effect. If one draws oneself out and look at it at a broader effect, it's going to have another effect. Is there any case law or authority telling us at what level of degree or granularity we should be looking at these various exceptions throughout the tax code? Well, I think there are two sets of case law. One is within the establishment realm. In Bono, McCreary, Muller, in this court in the Salvation Army case has said repeatedly, when Congress can reasonably infer a secular purpose, it has to defer to Congress. And so looking at the, that I think counsels in favor of looking at the broad scheme. But there are also throughout tax law cases in the Supreme Court, the Supreme Court has said, you don't, and we've cited these in our briefs, you don't need a perfect fit on tax statutes. And so the point is, yes, look at the whole code. Give Congress reasonable deference in enacting schemes. There's never a perfect fit in tax statutes. So when you hear concepts as Mickey will argue about vertical and horizontal equity, there is no statute that says you must have vertical and horizontal equity. There is nothing in the establishment clause that says you must have vertical and horizontal equity. Every time you create a general tax in any kind of exemption or deduction, you start to have cases that don't always look similar. So Congress- I say tax or exemption. I mean, we have that, this is not a subsidy, so to speak. Money going to the church. It's just, it's not a person, it's just that they don't take the money. This person gets a pass when it comes to taxation. Well, that's an important point, Your Honor, if I understand you correctly. The case law walls, for example, does draw a distinction for versus an exemption, which is really having religion not fund the government. So that does matter for an establishment clause purpose, if I understand the question correctly. If I could turn to the third prong of the lemon test, which is the statute at issue or the government practice at issue cannot engender excessive entanglement. This law, as the law in the Amos case did, actually effectuates a more complete separation by allowing the religious groups, allowing clergy to define and carry out their own mission without government interference. And that is acceptable under the lemon test, as the court said in Amos. The business necessity questions that the IRS normally asks, the convenience of the employer questions they would ask under Section 280A, for example, would be very intrusive for clergy applying in a clergy member's home. And you can look, for example, at the declarations that intervener defendants put in below, if you look at Bishop Peacher's declaration, for example. He said in his home, on a regular basis, he engages in spiritual counseling, prayer meetings, and social events. Father Malone, below in his, said most meetings, because the church doesn't have a regular building, most meetings of the church during the week occur in his home. He gives communion there. He has dinners there, Bible studies, spiritual crisis visits, has people stay overnight if they're visiting. All of these things would be very difficult and very entangling for the IRS to ask about in the context of religion. They would have to ask something like, well, when you have a pastor visit your home and stay in the bedroom, is that bedroom actually for religious use, or is that just secular hospitality? If somebody is having spousal troubles and they come to you and they want to stay with you that night to get separation from the spouse, say it's a spousal abuse issue. Well, it's- What did you say, what troubles? What did you just say? Oh, if someone had spousal troubles, for example, and they were going to see their pastor, and the pastor said, well, why don't you stay here tonight in our extra bedroom? Or you know what, if they don't have an extra bedroom, I'll put the kids in our room and you stay in their room. Does that make, is that just a friend or is that a religious duty? I think most pastors would say that's part of the religion. And so to have the IRS go in and try to untangle that and get involved in that inquiry to figure out if that's for the convenience of the employer would be highly entangling. Doesn't the IRS do that, though, for office exemption, office exemptions, whether it's an office in the home? And don't they have multi-factor tests that they do with regard to whether someone meets the minister, whether a church is tax exempt? There are inquiries the IRS is going to do. How do we compare and contrast this one, which you say is more invasive, with others? The difference is the free exercise clause. Look at Hosanna Tabor. The Supreme Court has said, when you are dealing with ministers, the people who embody the church, court inquiries into what that relationship is, how it's defined, what exactly is religious versus secular, is a real problem for the government. And if that's true for the US Supreme Court, it could be equally true for Congress. If the Supreme Court could say, as a matter of free exercise values, we are not going to get into whether Title VII or the ADA applies to ministers of the gospel. It's equally true that Congress could say, even if for secular employees, we're going to engage in the inquiry of whether an overnight guest is for business purposes, for a minister of the gospel, for clergy, that is a much more sensitive question under both the establishment and free exercise clauses. So I think that's the critical difference there. Would you like to reserve the rest of your time? I would like to reserve the rest of my time. Thank you. Thank you. Mr. Goodrich. May it please the court, Luke Goodrich, I represent the interveners. I'd like to start with Judge Brennan's question about what test applies, whether lemon test or historical analysis under Town of Greece. And the plaintiffs in this case have run as far as they can away from history. But the Supreme Court's most recent establishment clause case in Town of Greece said that the establishment clause must be interpreted in light of historical practices and understandings. Now that doesn't necessarily displace the lemon test once and for all. And this court obviously applied lemon earlier this year in the Concord Community Schools case. But it does mean that the court has to take history into account. And in this case, history strongly supports the constitutionality of Section 107. At the time of the founding, the established churches were funded in two ways, through taxes and land grants. And as Judge Mannion mentioned, both of those involved taking property from some taxpayers, taking money from taxpayers, and transferring it directly to the church and exclusively to the church. Section 107 does neither of those things. There is no transfer of funds from one taxpayer to the church. And it's not exclusive to the church because Section 107 is situated within the broader context of the convenience of the employer doctrine. So under both walls and win, Section 107 is strongly supported by history. Also, at the time of the founding, tax exemptions for parsonages predated the founding. And even when several of the states disestablished their churches at the time of the founding, they kept in place tax exemptions for parsonages. Which is a strong indicator that exemptions for parsonages were not viewed as an element of establishment at the time of the founding. And you see this also in the Griswold case from Iowa, the Supreme Court of Iowa in the late 1800s, where plaintiffs challenged this under the Iowa equivalent of the establishment clause and said, hey, these tax exemptions for parsonages, this is an establishment of religion. And the Supreme Court of Iowa rejected that claim, said it wasn't an establishment precisely because there's no transfer of funds from a taxpayer to the church. And because exempting parsonages was for the convenience of the church. Or having ministers live in parsonages was for the convenience of the church. So even in the late 1800s, courts understood the convenience of the employer rationale for exemptions like 107. So that history, under Town of Gris, has to be considered in the analysis. And plaintiffs have no serious answer to that. The second question Judge Brennan asked was, how do we compare entanglement? And I think very helpful on that score is the Tenth Circuit's recent decision in the Medina case, and that involved the ERISA exemption for church plants. Now this was an exemption that's exclusive to churches, and it was challenged by the plaintiffs as a violation of the establishment clause. And the Tenth Circuit upheld it in part on grounds that the exemption actually reduced entanglement, reduced government entanglement in religious questions. And the plaintiffs there made a very similar argument to the plaintiffs here. They said, you have this exemption for churches, but then you also have a bright line exemption for church-affiliated organizations. And that's just too broad. You should narrow it so the exemption only applies to churches. And the Tenth Circuit rejected that argument and said that drawing a line between churches and church-affiliated organizations would actually pressure churches to change the way that they operate to fit within the confines of the ERISA exemption. And the same issue is present here. If 107-2 were eliminated, as the district court ordered, and 107-1 remained in place, you would have significant pressure on churches to alter the way that they order their housing for their ministers. There would be pressure to buy up parsonages and require ministers to live in those parsonages in order to qualify for an exemption under section 107-1. But when you have 107-1 and 107-2 working together, that pressure, that discrimination among churches is eliminated. And as Mr. Pannincio mentioned, that's another secular purpose justifying section 107. When we talk about a secular purpose, the thing I'm curious about, on both sides, frankly, is a secular benefit. One or two of the amicus briefs got into that. The benefit, earlier he stated about spousal problems. You go to, why do you go to a minister or a clergy? Because it's totally confidential, and you can talk about those things. They're not talking about religion and other things. They're talking about how to save a marriage, or when the children are having  things that go on in everyday life. The effect, if I can use that word, and they keep asking about what's the purpose and effect, one effect is there's, it calms things down in everyday life, where people learn how to behave and deal with each other. And you have that confidential relationship. I look at that as calling it a secular benefit, but I haven't, I was actually glad to see it in a couple of these briefs, where they talk about that as an extension of the secular purpose. Absolutely, your honor. And as Mr. Pannuccio mentioned, ministers use their home for their ministry all the time. That's clear from the declarations of the interveners here. Counseling, marital counseling, Bible studies, prayer meetings, hospitality, and that's really an extension of the work of the church. And if section 107 were eliminated, as the plaintiffs have requested, it doesn't mean that all ministers would immediately be taxed on their housing. It means they would have to apply under section 119A2 or under section 280A. And the IRS would have to go in on a case by case basis and ask each minister, how much counseling do you do in your home? How many times a week does the church meet here? Is this really necessary for the ministry of the church? And those are deeply entangling inquiries. And it makes perfect sense for Congress, as a secular purpose and effect, to want to eliminate the need for the IRS to conduct those inquiries. With regard to your particular clients, the intervener defendants, they each probably had to go through a series of questions from the IRS with regard to their church status for tax purposes. Perhaps initially, when they either became decision makers for their church, or perhaps on an annual basis. Is there something in the record, or can you elucidate for us, the comparison contrast between what they would have done, gone through with the IRS as part of what your clients say is legitimate, versus what would be illegitimate for purposes of the entanglement. Right. The main question under, for example, they had to get 501c3 status. And there, the only question is, is this organization a church? And in fact, under the IRS code, a church has a lower burden of establishing 501c3 status than other types of organizations. They don't have to file the same application. They don't have to file Form 990. They're exempt from those types of financial disclosures. And so there are multiple provisions throughout the IRS code, not only 107, that tries to reduce these sorts of entangling inquiries that the IRS might have to conduct. But the main question under 107 is, is this organization a church? And is this person a minister? And both of those inquiries, whether an entity is a church, or whether a worker is a minister, are repeatedly answered by courts, under the ministerial exception, including this court's case in Gruscott from earlier this year, the Supreme Court's unanimous opinion in Hosanna-Tabor. And there, all nine justices saw no problem finding that the school there was a religious organization, and finding that the teacher, plaintiff there, was a minister. And I think, again, Medina from the Tenth Circuit is very helpful on that precise point, because the Tenth Circuit said, we don't even, the plaintiffs made that same argument. They said, well, to apply ERISA's church plan exemption, you have to figure out whether it's a church, or whether it's affiliated with a church, and that's entangling. And the Tenth Circuit rejected that and said, we don't even know how we would apply First Amendment law, much less the tax code, if we couldn't decide whether an entity was a church. And that's the same issue here. The IRS has essentially traded entanglement. It's traded the deeply entangling inquiries under Section 119 for the well-known and routinely applied inquiries of who is a church and who is a minister. And if I could elaborate just a touch on why Section 119A2 is so entangling when applied to ministers, there are three main inquiries that the IRS has to undertake to apply Section 119A to ministers. The first is, is this worker an employee, or is he or she an independent contractor? And we do that in the law all the time for various types of employees. But both the courts and the IRS have recognized that deciding whether a minister is an employee or an independent contractor is a very difficult task. And it often turns on internal matters of church structure. How the minister is overseen, how the minister is trained, how the minister is paid. And you could have very similar employees from very similar religious organizations. And yet, one would be treated as a minister as an employee. One would be treated as an independent contractor based solely on church structure. And so precisely because that inquiry is so entangling, Congress has eliminated in other parts of the IRS code. You have Section 414E, which deals with ERISA and treats all ministers as employees. And then you also have Section 1402, which deals with self-employment taxes, and says that all ministers are treated as self-employed. And so Congress itself is trying to eliminate that sort of inquiry when it comes to ministers. And that's only the first inquiry under Section 119A. The second inquiry is whether the home is used, is necessary for the convenience of the employer. And we've already touched on that, but that's where the IRS would have to come in and say, how many Bible studies are you doing? Is this really necessary for the ministry of the church? And Justice Alito and Justice Kagan, their concurring opinion and Hosanna Tabor said, that type of inquiry where you have the government sitting in and saying, how essential is it to the ministry of the church? That is troublingly entangling. And then the third inquiry under Section 119A2 is whether the housing is on the business premises of the employer. And when you hear business premises, you might think that's an easy inquiry, but the courts have held that spatial unity is not dispositive. It's not a geographic test. The question is, are the business functions performed in the home sufficiently important to the work of the employer? And again, that's the question, is what the minister does in his home, counseling troubled spouses, holding Bible studies, is that sufficiently important to the ministry of the church? So when it comes to entanglement, Section 107 significantly reduces that burden on the IRS. And it's really a small price to pay to keep the IRS out of those entangling questions. Should the determination as to whether or not the IRS asks these questions of a group be based upon the number of people implicated or something else? I think my first answer would be, that's a very important question for Congress to decide. And Congress is well positioned to do that because it can consider how many employees are affected, how much money is at stake. And I think the other important point with Plaintiff's argument here, I think they're about to stand up and they'll offer a bunch of reasons why they think 107 is bad tax policy. They'll argue, well, we don't think it's really similar to all of these other convenience of the employer exemptions. They're different. And we think Congress shouldn't have adopted a bright line rule. But the question here is not whether Section 107 is a platonic ideal of a perfect tax code. I think it's actually great policy and I would love to fight on that issue. But even if Section 107 is not perfect tax policy, the Supreme Court has repeatedly said, including in the context of establishment clause challenges to tax provisions, that Congress gets substantial deference when it's creating classifications and distinctions in tax statutes. That's Mueller versus Allen. And so the question isn't, is the tax code perfect? But is Congress making a reasonable judgment? And here, Congress has made a very reasonable judgment. It's consistent with history. It's consistent with good tax policy. And it's consistent with constitutional norms of non-entanglement and non-discrimination. So Section 107 should be upheld. Thank you. Thank you. We'll now hear from Mr. Bolton. Can I ask a brief intro? That's fine, Professor. May it please the Court. My name is Adam Chaudhary. I represent a number of tax professors who have filed an amicus brief here. And we're here to speak for the tax code. Section 107-2 is unconstitutional because on its face, it singles out ministers for a tax benefit that is unavailable to any other taxpayer. Now, what the government has tried to do, and what we've just heard, is that there are other tax provisions in the code that afford tax-free housing to certain other kinds of employees. And they're trying to argue that this gives sort of constitutional cover for an exclusive benefit to ministers. And so what I'd like to do with my time is explain to you actually how the tax code works and how the claims they're making about these other provisions, and in fact about Section 107-2, are not quite accurate. So as a preliminary map, housing provided by an employer must be included in income. So if the government were to give you a housing allowance or me a housing allowance, we would have to pay tax on that housing allowance. In certain very limited circumstances, the government has said, well, if you have to live on site in order to do your job, the housing isn't compensation, but rather it is necessary for you to do the job. And so therefore, on a normative basis, should be excluded from income. So for instance, if you work at a lighthouse, you have to live at the lighthouse or you can't do your job. So your bunk at the lighthouse isn't income to you. The same is true for a captain on a boat. When he gets a bunk on a boat, we don't tax him on the value of that bunk. And so what Congress has done, it has made a very limited carve-out for housing that is provided by the employer. And we can see that in 119. It must be on site. It must be in kind. It must be required for you to do the job. And it must be for the convenience of the employer. And I think there's a little bit of confusion here about what convenience of the employer means. It doesn't mean it helps the employer. It means that it is mission critical for the employer's job that you live on site. It's not enough that you live across town or that you're available overnight, right? That doesn't get you tax-free housing. Doctors are on call. They have to come into the hospital. But if a hospital said, we're going to give you a housing allowance because we need you to live within a certain area or we need you to be on call, they don't get tax-free housing. So you asked earlier sort of what level of abstraction should we be looking at? And my answer to that question is that we should not be taking a level of abstraction that ignores the underlying reality, the rationale that Congress used when adopting these different provisions. And these different provisions were all adopted for very different reasons. And if we take a level of abstraction so high that it obscures the reality, the truth underlying these, then I think we have missed the boat and taken a wrong turn. So let me talk briefly about these various different provisions. So first, let's start with Section 912 of the Code. This is the provision that applies to government employees stationed overseas. If you look at the legislative history of that provision, they didn't say it's because of the convenience of the employer. In fact, none of these statutes, other than Section 119, mentions convenience of the employer. If we're going to construe statutes, step one, look at the language of the statute. There's only one statute that says convenience of the employer. It's not 107, and it's not any of the others. So 912 doesn't say convenience of the employer on its face. And the legislative history of 912 says, hey, we'd like to give these guys a raise, but we're in the middle of a war, so we can't give them a raise, so here's what we're going to do. We're going to exempt from income, exempt from tax their housing allowances, right? It's a subsidy. It's a subsidy, pure and simple, for government employees. If we look at Section 134, which deals with the military, right, the military, this goes back, if we're going to talk history, there was a distinction made for soldiers between salary and allowances. And when the income tax comes in, the government says, yeah, we're going to draw a distinction between salary and allowances. We're going to tax salary. We're not going to tax allowances. But again, this is an employment contract between the government and its own employees. And as the courts have said, it's very dangerous trying to extrapolate from an employment relationship that the government has with its own employees and their decision whether to gross up and tax or simply exempt income. For instance, and one example would be combat pay. The government does not tax combat pay of soldiers. That's basically a salary increase, but it's done through the tax code. So what other provisions are there? Section 911, this is the provision for expatriates. The provision for expatriates, essentially, if you live overseas and you're overseas for a certain number of days, you get to exclude up to about $100,000 of income. And about 30 years ago or so, they said, ah, we'll throw in housing as well. If you look at the legislative history of that, they don't say for the convenience of the employer. What they say instead is, we want to bolster international trade. How do we support those people who are into international trade? Well, among other things, we relieve them from double taxation. We don't want them paying tax here and paying tax in France or where it is they happen to live. So we exclude from income here in the United States the money they make while living abroad, right? So there isn't, in fact, a theme that runs through these provisions. They have the same effect, but there is not, in fact, a convenience of the employer sort of overarching theme that ties together all these different provisions. What the proponents are trying to do is they're trying to bring themselves within walls, right? The government can, in fact, create provisions that apply to churches. We are not saying that churches must be exempted from everything. Section 501c3 says certain organizations can be tax exempt. They include charities, universities, and churches. All of these organizations provide public goods, and because churches naturally fall into this class, they're entitled to the exemption just like everybody else. They cannot cite any other provision in the code where there's a general class that's contained in multiple different statutes passed at radically different times for radically different reasons. And this is why the level of abstraction matters, because when you get down into the details and you actually look at why these statutes were passed, the claim of a broad scheme that ministers naturally fit into simply falls apart, and 107.2 becomes clear for what it is, which is a special benefit only for ministers. So I want to address next history. So there was some discussion of the town of Greece. And yes, exemptions for parsonages go way back in time. Those are property tax exemptions. We are talking here about income tax. And the history, when you look at town of Greece, it says stuff that happened back when the founders actually came up with the First Amendment that was okay then, probably okay now. The income tax didn't exist back then. And so the history of the parsonage exemption for property taxes, we're not challenging that. What we're saying is that in 1913, when we ended up with the income tax, from day one, ministerial income was included, right? What we're talking about here is whether ministers' income should be subject to tax. And what 107.2 says is, if they get a cash allowance, eh, we're not going to tax that. But we're going to tax everything else. In fact, what's really interesting here is that 107.2 exempts from income tax the value of housing they receive, but ministers still have to pay the equivalent of payroll taxes on that same money. So we're not actually fully exempting them. We're creating this special carve-out for one little piece of their income, and in a way that other taxpayers simply are not entitled to. We're somewhat limited in First Amendment jurisprudence by the fact that so many of the cases are tied to particular facts. You've drawn the distinction between property and income. Right. We still have to apply a test, though. We still have got to apply the applicable precedent. Is it Plaintiff Appley's position that we apply both Lemon and Town of Greece? What's your position on that? I think we went under both tests, so I'm indifferent. I think Town of Greece doesn't speak to the income tax at all. As you know, there have been standing issues with trying to bring this case. This isn't a longstanding tradition, and I think under the Lemon test, we prevail as well. If you look at 107.2, it says Ministers of the Gospel, which, by the way, the IRS has construed to me in any religious leader, because obviously on its face it's unconstitutional, as applying only to Christians. So they've broadened it out to try to save it, but it still has the appearance, or any rational person would look at that and say that advances religion. So I don't think it matters for us which test you apply. I believe we went under both. So let me turn to the entanglement question, because I think that's an important question. So what happens is if the proponents say, well, okay, it does seem to benefit religion. It's not tied to these others, but nonetheless, it's a good rule under the First Amendment because of accommodation, it seems to be the claim. And so first of all, if we were to find 107.2 unconstitutional here's what would happen. Ministers who get cash allowances would simply have to pay tax on the cash allowances. That's not entangling, right? Ministers have to pay tax on all their other income, and so we don't go down the parade of horribles that the other side claims. We simply tax them on their full income. Well, some would attempt to go under 119, correct? If they wanted to, they could, but 119 again, with all respect to Mr. Goodrich, is not really that entangling. We ask, do you live on site? Do you have to live there in order to do your job? Are you like a lighthouse keeper? Those are secular questions that could easily be answered. And to be clear, right, because we only have standing today to challenge 107.2, they could also go under 107.1 where they would avoid those questions altogether. And so one of the claims that's being made is that 107.1 is sort of the minister's version of 119. It's in-kind housing provided to churches, but with relaxed rules. I would point out that 107.1 and 107.2 both say housing provided as compensation. If you look at section 119, which they say is the similar provision, 119 would absolutely exclude, by exclude not cover or not exclude, housing provided as compensation. The convenience of the employer test only excludes housing if it's not compensation. If it is instead, let's take your judicial chambers. They provide you chambers. You don't pay tax on the value of your chambers. Why? Because your employer provides it to you so that you can do your job. Only housing of that kind can be excluded under the convenience of the employer test. And so if we got rid of 107.2, what we would end up doing is just simply taxing them. If they were to live in church provided housing, yeah, they would be entitled to the exclusion if they qualify for that. But that is, according to the proponents, that's a normative rule. You have to live in church property in order to do the church job. It cannot be the case that living in your own home is for the convenience of the employer. That just turns the whole meaning of convenience of the employer on its head. It has no substance at that point. I think I wanna just go back. I know your time's running. I mentioned this about when you get secular purpose and effect, the effect and what I see missing when the discussion is the benefit to society, not on religious issues, but on the benefit in society that is pervasive. And it seems it's ignored. I don't know whether you go to Concord or whatever, but you have all these people together. They're loving each other and friendly and all the right things. And they say, well, yeah, but they celebrate the birth of Christ. Now here we talk about, well, what does a minister do? He's confidential, but oftentimes that's his spousal. It's all kinds of problems. What about that? So if Congress wanted to subsidize things because they are good for society, and I am not suggesting that what ministers do isn't good for society, there's a way they can do that constitutionally. And the way they do that constitutionally is they make a benefit available to a class of people, all of whom provide the same kind of benefits, but a benefit made available only to ministers. What class of people? It would be perhaps psychologists. It would be counselors. Right, there are a whole class of people who provide services to people in crisis. And if that's what we are trying to support, that's what the law has to- Yeah, they cost a lot of money. So they do. But the government shouldn't be in the position of subsidizing ministers because counselors cost a lot of money. I see I am out of time. So I will say thank you very much. Thank you. Mr. Bolton. Thank you. May I please report? My name is Rich Bolton. I represent Annie Lloyd Gaylor and Dan Barker and the Freedom From Religion Foundation in this matter. What brings us here today and the discussion that's occurred so far- Mr. Bolton, I'm a very old man. If you don't stay closer to the microphone- You know what, and I appreciate that because I don't hear very well either. So, and you guys have been wonderful for me because I've been able to hear you well. So I really do appreciate that. Dan Barker and Annie Lloyd Gaylor are the co-presidents of the Freedom From Religion Foundation. The Freedom From Religion Foundation is a 501c3 organization. And to speak to your honor in terms of the benefit to society, and this was brought up in WALS and confirmed in Texas Monthly, which has not been discussed. The 501c3 basically is a category of entities that include churches that provide benefits to society. If you're looking for a delineation as to what would be a non-religious specific categorization, that's probably the most relevant. The churches qualify for 501c3, but so does FFFRF. And many groups qualify for the 501c3. Is it expensive to have those groups? Maybe, maybe not. But Congress has made the determination, the appropriate determination, that that broad group, that the benefits that they provide justify the exemption. But I should also note, though, that the exemption from income tax is a benefit. It's a privilege. It's not a right. And so one of the suggestions that we hear from the, particularly from the intervenors, is that the imposition of any sort of qualification for the tax exemption is inappropriate insofar as it's applied to churches, because churches stand in a, in terms of free exercise, stand in a category by themselves, and that it would be appropriate then to, or inappropriate, to basically impose any criteria on church wage earners, which is what we're talking about here. In terms of the income tax that's at issue here, Mr. Goodrich, it was very interesting to hear him, because he talked continually about the effect on churches. He does not recognize any distinction that what we're dealing with here is not church property. We're dealing with, we're dealing with basically clergy wage earners, Annie Lori Gaylor and Dan Barker are wage earners. The money, when it passes from the church to the wage earner, it's not church property, and the arguments that are being made here is that somehow that this is a taxation issue vis-a-vis church property. It's not a church property issue. But insofar, I noted that, and you raised the issue that the subsidy versus exemption issue, and that somehow, if it's an exemption rather than a subsidy, that it doesn't have any real pocketbook implications. And in fact, the suggestion being that if it's an exemption rather than a subsidy, that the law countenances, that giving an exemption without any qualification or justification would be appropriate for churches or clergy because it's not, it's an irrelevant factor. It's an exemption rather than a subsidy. The fact of the matter is, this case is, we're here. We're here because of pocketbook issues. And that's where the suggestion throughout the argument today, in a sense is, we understand Dan Barker and Annie-Laurie Gaylor are here because they were denied the exemption. That's a pocketbook issue. And Mr. Goodrich basically says by taxing, it will affect how churches organize themselves in terms of housing, providing housing for clergy. The suggestion that this case is not about pocketbook issues and that the issues that, the motivating issues here are about entanglement, I feel like it's like an Alice in Wonderland type argument because it's contrary to history, it's contrary to the common sense understanding of why we're here. This is a pocketbook issue. And in regard to that, and I go back to, again, the suggestion that you raised in terms of, well, they're providing a benefit to society. They may be providing a benefit to society, but in terms of differentiating and providing that pocketbook benefit only to church and clergy wage earners violates the establishment clause. The principles of the establishment clause, the fundamental principle, is one of neutrality. And we have here in 107-2, we have here a provision that facially calls out only one group, and that is clergy wage earners. That might be a good jumping off point for the case you mentioned earlier, Texas Monthly. Yes. What's your position with regard to the controlling opinion there? Is it Justice Brennan, Justice Blackmun? If you do the nose counting and apply the test that Marx applies, Brennan's decision and his construction in the application of the establishment clause, Brennan's opinion is controlling. There are five justices that agreed with his rationale. I would also note then, in regard to that, the suggestion, I'm not arguing, by the way, in terms of the construction of Texas Monthly, some outlier construction of that case. Virtually every decision that I have ever seen, including decisions by the Supreme Court, understand that case for precisely the same proposition, the proposition that if you're gonna have an exemption like that, you have to apply it to a broad group in which the defining characteristic is not a religious criteria. And here, with 107.2, the qualification for 107.2 is precisely just a religious criteria. And the Supreme Court in subsequent decisions cites Texas Monthly for that proposition, and virtually every case I've ever seen construes it for that proposition. Basically, the proposition, the analysis by Justice Brennan in that decision. Now, part of our challenge, of course, is there are references to religion and churches throughout the tax code. And they're not all before us. One particular one is. Every time religion or church is mentioned in the tax code, does it make it something that's entanglement with an establishment clause problem? It's this particular one. And as I understand, Mr. Bolton, your argument is because of a difference in treatment violates the fundamental neutrality which you believe should exist, you hold exists. Yes, Your Honor. That, in and of itself, is the syllogism for purposes of declaring it unconstitutional? Yes. And so basically, we start with what I think is almost an unassailable proposition that 107.2 creates a benefit that is provided exclusively to clergy wage earners. Now, having said that then, and that then brings us into basically, is there some then justification for a deviation from the rule of neutrality? I don't think there's any, there can be no real serious discussion here or disagreement that 107.2 creates a benefit that is not available on a non-religious basis. You've mentioned, I just wanna interrupt you, don't wanna interrupt your train of thought, but you mentioned your client were denied certain benefit. Yes, Your Honor. What were they doing that they wanted, I guess, an exemption for? Well. I don't, I want you to continue with your conversation, because that's what I'm a little confused about, why they were denied something. They applied, basic, okay, and I appreciate the points you're making. As a starting point, in order to get the 107.2 exemption by a clergy, the employer needs to designate an amount of their income to be used for housing purposes, and that amount, if used for housing purposes, then becomes exempt. In our case, then, Annie Lloyd Gaylord and Dan Barker, the co-presidents of a 501c do-gooder organization, just like the churches. It's freedom from religion. Pardon? Freedom from religion? Yes. Okay. Yes, and. Were they ministering, doing something under freedom from religion? All of the 501c3, the qualifications for it, basically, and I'm being a little bit facetious, but they're basically, they're basically, the exemption is for some socially, phrase you use, benefit to society type service that they're providing. And with, and it's interesting, because you, you look a little bit askance as if how could the freedom from religion foundation be providing such a socially useful, but the fact of the matter is, and this was raised in all of the briefs, this emphasis that the freedom from religion foundation is an atheist organization, and the suggestion, the implication seems to be that, particularly contrasted with clergy, that this should be some sort of a jumping off point for, as a decision point. The fact of the matter is, they're an educational organization. They provide philanthropy. Do they have a constituency that gather together and talk about atheism, or whatever you call it? Not all the, your honor, the 501c3, the suggestion that, that in order to be qualified for that tax exempt status as an entity, that you have to basically provide the sort of church counseling. That's a, that's too narrow a view. In terms of. You get a free house. But 501c3, there's a whole range of 501c3. So what happened in this situation then, was the employer, freedom from religion foundation, designated an amount that very conservatively estimated their housing cost, and then the taxpayer, in this case then, sought an exemption for the designated amount. And the IRS. Did you have to provide housing? Yes. And the IRS denied that. Okay. The other issue that is overlooked, the discussion with, for instance, with respect to entanglement, and with respect to section 119. Section 119 does not provide for for any taxpayer, an exemption for an allowance, a cash allowance. So 119 is not co-extensive. You know, it's not simply, 107 to the cash housing allowance. It's not simply providing the same benefit of section 119 by other means. By another means of inquiry. But I will also note, when I talk about that there's a sense of, that, I'm talking about a different case than the history that I'm aware of. The suggestion that somehow 107-2 was intended for, you may finish your point. Okay. Was intended, was intended, that the purpose was not a cash subsidy to clergy, but that the intent was to avoid entanglement. Council said, if there's a reasonable basis for inferring legislative intent that, and here the suggestion is that, that is, we can legislatively infer that the intent was to avoid entanglement. But if you look at the requirements that are imposed for the 107-2, it has to be, ministers have to conduct religious worship, perform sacerdotal functions, administer ordinances or sacraments. And it has to, they have to be employed by a church. And the IRS uses a 14 test, 14 point test to determine what qualifies as a church. So the suggestion here that, that the legislative intent, they must have been intending to avoid entanglement, and that this is what they substituted, it defies credibility. It's not plausible. And so in the end, what we have here is an unjustified preference for religion that is not justified by any of the explanations that are proposed by, advanced by the government and the interveners. Thank you, Your Honor. Thank you, Mr. Bolton. Mr. Pruniccio. Thank you, Your Honor. I'd like to briefly address three topics. First, Professor Chodoro's description of the statutory scheme here. Again, there are two general rules. There's 119 for in-kind and 280A for cash that is spent in the home on business. And then there are several categorical exceptions. Now, Bueno, the Bono case, McCreery, Muller, and the Salvation Army case all require deference if a secular purpose can be inferred. And what my friend did and what the district court did is try to find ways that Congress could not possibly have had a secular purpose, rather than taking the obvious facial possible secular purposes that are there. And in fact, another group of tax professors put in an amicus brief that disagrees completely with Professor Chodoro's view, which shows there are multiple normative views you could take of what these provisions do. And the court is required under case law to give deference to Congress and assume they took the secular view. I would also note that Professor Chodoro is simply wrong about the history of these provisions. If you look at the timeline that is set out in our brief or the other tax amicus brief, take the military exemption, for example. That started with the Jones case in around 1950. And that case specifically said the housing exemption for military was about military necessity, not about increasing the salary of military. Or take the educational exemption in 119D. If you look at Senate hearing 99-246, this was in July of 1985, there were letters that were submitted that said the reason we want to have campus living near, not on, but near us, is for the educational purposes served by faculty. So these other categorical exemptions are about business necessity and the working communities that are being created. Second, Judge Brennan, you asked which is more entangling. I would note that the Walls case at page 674 says there is entanglement with taxation or with an exemption. But the free exercise clause already requires us, requires Congress, requires courts, to ask what is religion, what is a minister. It does not require what the convenience of the employer doctrine, the intrusive inquiry. And so Congress chose to take the inquiry that's already required under the Constitution. And then lastly, I'd just like to address Texas Monthly and the controlling test, if I may. It's important to point out that the Blackmun-O'Connor opinion does not, does not adopt the subsidy versus exemption reasoning that is in the Brennan plurality. And that is quite a broad ruling. That the court in Texas Monthly did not overrule Amos. And the only rationale that is common to both the plurality opinion and the concurrence was that the tax exemption was confined exclusively and limited to the sale of proselytizing literature after a history of a broader exemption. Here, we have a much more complicated and rich history of Congress trying to deal with the general issue and the IRS through rulings and administrative rulings, trying to deal with how do we figure out convenience of the employer. The history of Texas Monthly with Suey Generous is nothing like the long and complicated and broad treatment we have here. So your position under Marks is that the Blackmun opinion controls? Blackmun is the narrower opinion, yes. Thank you to all counsel and as well as to the amici for the excellent advocacy. Thank you. The case will be taken under advisement.